# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON M. FOREMAN,<br><br>    *Plaintiff*,<br>v.<br><br>DEPARTMENT OF THE NAVY *et al.*,<br><br>    *Defendants*. | Civil Action No. 18-367 (TJK) |

## MEMORANDUM OPINION

Jason Foreman, a former servicemember in the United States Marine Corps, has appealed the decision of the Board for Correction of Naval Records (BCNR) denying his request to upgrade the status of his other than honorable discharge by suing the Department of the Navy and Richard V. Spencer, in his official capacity as Secretary of the Navy.

After serving for about three years, the Navy discharged Foreman under other than honorable conditions "due to a pattern of misconduct," some of which had also led to Foreman's conviction by special court-martial. Foreman then sought recourse with the BCNR, requesting that it upgrade his discharge status and order that he undergo medical evaluations to determine his eligibility for disability benefits. He claimed, among other things, that the discharge decision improperly relied on the conduct underlying his court-martial and ignored evidence of his physical and mental disabilities. The BCNR, finding no material error or injustice, denied Foreman's requests. That determination, Foreman claims in this suit, was arbitrary and capricious, unsupported by substantial evidence, and otherwise contrary to law, in violation of the Administrative Procedure Act.

The parties have filed cross-motions for summary judgment on Foreman's claims. For the reasons explained below, the Navy's motion will be granted, and Foreman's motion will be denied.[1]

## I. Background and Procedural History

### A. Foreman's Service and Special Court-Martial

Jason Foreman enlisted with the Marine Corps and entered active duty in 2000, serving as a "field wireman." AR 16, 143. He was assigned to the Marine Corps Air Station Cherry Point, North Carolina, beginning in May 2002. AR 25. In August of that year, he began to experience left knee pain, and he was ultimately diagnosed with iliotibial band syndrome (ITBS). AR 65. He was then placed on a six-month period of limited duty beginning in November. *Id.* Though "his symptoms did not improve significantly" with treatment, Foreman "was able to complete many of his work related duties and was therefore listed as deployable." *Id.*

In February 2003, Foreman deployed to Kuwait, though he remained on limited duty. AR 26, 65. He claims that, during his deployment, his commanding officer forced him to perform tasks outside his limited duty restrictions. *See* AR 58; Pl.'s MSJ at 8. While in Kuwait, Foreman was referred for a medical evaluation because of "alleged homicidal threats [he] made toward supervisors in his chain of command." AR 58. The report from that evaluation indicates Foreman had "fantasiz[ed] about killing" individuals in his chain of command, and that he had "specifically stated he had planned to use a knife to kill [his staff sergeant]." *Id.* The medical practitioner diagnosed Foreman with an unspecified adjustment disorder, occupational problems,

---

[1] In ruling on these motions, the Court considered all relevant filings, including, but not limited to, the following: ECF No. 1 ("Compl."); ECF No. 8; ECF No. 20 ("Pl.'s MSJ"); ECF No. 25 ("Defs.' MSJ"); ECF No. 32 ("Pl.'s Reply"); ECF No. 34; ECF No. 35 (Joint Appendix, with citations designated as "AR __").

left knee pain, and "deployment/occupational stressors." AR 59. He recommended that Foreman be sent back to the United States and receive a formal commander-directed psychological evaluation.[2] AR 60.

Foreman returned to the United States in May 2003 when his six-month period of limited duty expired, and he then went on leave. *See* AR 65. Due to his ongoing symptoms from his ITBS, Foreman was referred to a Navy medical board in June to review his fitness for continued service. *See id.*; *see also* ECF No. 26-3 ("SECNAVINST 1850.4E") ¶ 1003.[3] The evaluation was limited to his physical condition. *See* AR 65. The report determined that Foreman had not improved significantly during his six months of limited duty, though it acknowledged that his "deployment did not provide an optimal atmosphere for recovery" and surmised that Foreman might "be able to make enough of a recovery to return to full duty" if given additional time. *Id.* The medical board thus recommended that Foreman return to limited duty for another four months, as opposed to administratively separating him because of his disability at that time. AR 66. Navy guidance provided that, at least two months before the end of that limited-duty period,

---

[2] The record does not reflect that Foreman underwent any psychological evaluation upon his return, *see* Pl.'s MSJ at 9, though the Navy represents that the medical practitioner's recommendation "was not an order to any commander to conduct such an evaluation," Defs.' MSJ at 11.

[3] The Navy maintains a "Disability Evaluation System" (DES) through which servicemembers are evaluated to determine their medical fitness for continued service. *See* SECNAVINST 1850.4E ¶ 1003. At the time of Foreman's service, when a servicemember was referred to Navy DES, a medical evaluation board examined the servicemember and his file to determine whether he suffered from a chronic condition that made him unfit to return to military duty. *Id.* ¶ 3102. The reviewing board then submitted the case and its report to a "Physical Evaluation Board" (PEB), which made a final determination about the servicemember's fitness and eligibility for disability benefits. *Id.* ¶¶ 3102, 3401–06.

Foreman would undergo a second evaluation to determine his status. *See* SECNAVISNT 1850.4E ¶ 1008.[4]

On July 22, 2003, however, the Navy convened a special court-martial charging Foreman with two violations of the Uniform Code of Military Justice. AR 17–18. The charges concerned his conduct while deployed in Kuwait, including possessing a weapon contrary to orders and threatening to kill his superior officer. AR 18. A third charge was later added for threats Foreman made to harm his former girlfriend. AR 31, 39. Navy guidelines require the suspension of any disability evaluation process before a PEB when an individual is being processed for misconduct that could result in a punitive discharge, including a court-martial. AR 19. For that reason, although Foreman had not actually been referred to a PEB, the officer overseeing Foreman's case informed the medical board of the ongoing disciplinary proceedings. AR 19.

After Foreman was charged, Foreman's counsel requested that the Navy investigate whether Foreman suffered from a severe mental disease or defect at the time of his alleged criminal conduct. AR 38–39. A board of medical examiners—based on clinical interviews, Foreman's medical record, and a series of psychological tests—concluded that Foreman had not suffered from such a disease or defect at the time of the alleged conduct. AR 40–43. In addition,

---

[4] Defendants submitted with their cross-motion portions of several manuals and instructions cited in their memorandum. *See* ECF No. 26. The Court relies on three of them here: ECF No. 26-2, Marine Corps Separation and Retirement Manual ("MCSRM"); ECF No. 26-3, SECNAVINST 1850.4E; and ECF No. 26-6, Memorandum for Secretaries of the Military Departments (Sept. 3, 2014) ("SECDEF Memo"). Though these materials were not officially included in the certified administrative record later submitted by the parties, they are explicitly referenced in that record. *See, e.g.*, AR 157, 160 (MCSRM); AR 82 (SECNAVINST 1850.4E); AR 2 (SECDEF Memo). And the materials are each official, published guidance from the Executive Branch of Department of the Navy. Indeed, Plaintiff himself cites to these materials and makes no objection to Defendants' reliance on them. Accordingly, the Court considers them along with the certified administrative record for purposes of this proceeding.

though the board did diagnose him with occupational problems and an unspecified personality disorder, it concluded that he was competent to stand trial. AR 42–43.

On September 11, 2003, Foreman agreed to plead guilty to two of the counts with which he was charged—the two threats of violence—and not guilty to the third, concerning his improper possession of a weapon. AR 21–23. As part of his plea agreement, he stipulated to a set of underlying facts, including that he threatened to kill his staff sergeant and to kill or harass his former girlfriend. AR 25–30. Though he stated that he did not remember specifically making those statements, he nonetheless admitted to them because he remembered harboring those intents and had no reason to believe that the witnesses were lying. AR 27, 29–30. On September 17, Foreman was sentenced to 5 months' confinement, a $3,500 fine, and a reduction in rank. AR 31, 33. The convening authority decided not to order that Foreman be punitively discharged for misconduct. *See id.* Even so, as part of his plea agreement, Foreman acknowledged that he understood he might "be processed for an administrative discharge even if part or all of the sentence, including a punitive discharge, is suspended or disapproved pursuant to [the] Agreement," and specifically, that that discharge could be classified as "other than honorable." AR 21–22.

### B. Administrative Separation

About a month later, Foreman's commanding officer recommended Foreman for administrative separation "due to [a] pattern of misconduct." AR 90. The recommendation specifically referred to the conduct that resulted in Foreman's special court-martial—the threats he made toward his commanding officers and former girlfriend—although it incorrectly stated that Foreman had been convicted of all three charges. AR 96. The recommending officer also conducted an interview with Foreman to discuss his separation and reported that "Foreman's attitude and demeanor throughout the interview was cavalier and [borderline] disrespectful" and

5

that he had "no rehabilitative potential." AR 96.  As part of the administrative separation proceeding, several other officers submitted letters recommending separation, citing immaturity, a lack of discipline, and Foreman's inability to perform assigned tasks.  *See* AR 97, 117–22.  And another instance of misconduct—where he was "[c]ounseled" for making personal long-distance phone calls using Navy telephones—was included as well.  AR 175.

In his rebuttal statement, Foreman admitted to making "serious mistakes," but he argued he had been adequately punished through his special court-martial, and he requested a chance to rehabilitate his standing.  AR 124.  If the Navy determined to discharge him, he requested, at the very least, a discharge under honorable conditions.  *Id.*

On December 1, 2003, the Navy formally decided to administratively separate Foreman "by reason of misconduct" in light of Foreman's "pattern of misconduct."  AR 157.  Foreman was officially separated from the Marine Corps on December 11, 2003, with an other than honorable characterization of his service.  AR 16.

On the same day the Navy formally determined to administratively separate Foreman for misconduct, he was once again examined for physical disability because he had completed his four-month period of limited duty.  *See* AR 85.  The medical officer determined that Foreman suffered from chronic ITBS and had "experienced little improvement in his condition."  AR 85.  While Foreman's condition did not, in the officer's view, constitute a "physical disability," the officer still recommended administrative separation as a result of his physical condition.  *Id.*  Because Foreman had already been administratively separated for misconduct, however, no action was taken on the medical officer's recommendation.  *See* Defs.' MSJ at 10.

## C. BCNR Proceedings

In December 2011, Foreman petitioned the BCNR to upgrade the characterization of his discharge and direct the Navy to conduct a PEB medical review for disability eligibility.  *See* AR

6

5–6. The BCNR, by the Secretary of the Navy's delegation, has authority to "correct any military record . . . when [it] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *see also Reilly v. Sec'y of the Navy*, 12 F. Supp. 3d 125, 130 (D.D.C. 2014). Though Foreman's petition was not filed within the three-year regulatory time limit, the BCNR exercised its discretion to review the merits of Foreman's claims. *See* AR 1; 32 C.F.R. § 723.3(b).

In support of his petition, Foreman made two main arguments. First, he argued that his other than honorable discharge was unjust given his record of misconduct. He contended that the discharge—which impairs his ability to qualify for GI Bill benefits—was an excessive punishment for his actions, particularly given that he had already been disciplined as a result of his special court-martial. AR 11–12. And he noted that the officer who recommended him for administrative separation incorrectly stated that Foreman had been convicted of all three court-martial charges. AR 12. He also argued that the officer's observations that Foreman was "cavalier" during the administrative separation interview and that he had no "rehabilitative potential" were biased and unsupported by evidence. AR 12–13.

Second, Foreman argued that the Navy failed to adequately consider his health condition. He asserted that the officials reviewing his administrative separation recommendation did not adequately consider whether his mental health struggles, including alleged post-traumatic stress disorder (PTSD), affected his "pattern of misconduct." AR 13. He claimed that he should have been medically discharged and provided a disability rating instead. AR 13–14. He also claimed that he was entitled to a medical discharge and disability rating because of the December 2003 recommendation that he be discharged due to disability on account of his ITBS. *Id.*

The BCNR, in a written decision, found no reason to conclude that the Navy's decision to discharge Foreman due to his misconduct evidenced "probable material error or injustice." AR

7

1–2; *see* 32 C.F.R. § 865.4(h)(4). It specifically cited his threats that led to his court-martial conviction as well as his censure for making private long-distance telephone calls from a government-owned telephone. AR 2. The BCNR was also not persuaded that Foreman was unfit for duty due to physical or mental disability. *Id.* But it explained that even if he were, the disciplinary discharge would have taken precedence. *Id.* Lastly, the BCNR stated that it "carefully considered" Foreman's assertion of PTSD, but it explained that it could not substantiate Foreman's claim that he suffered from PTSD at the time of his misconduct on the record before it. *Id.* It further stated that, in any event, the "seriousness of [Foreman's] misconduct outweighed any mitigation that would be offered by the PTSD." *Id.*

### D. This Action

Foreman commenced this action in February 2018, filing a complaint alleging that the BCNR's decision violated the APA, 5 U.S.C. § 500 *et seq.*, because it was arbitrary and capricious, unsupported by substantial evidence, and otherwise not in accordance with applicable law. *See* Compl. ¶ 30. He requests that this Court set aside the BCNR's decision and order an immediate upgrade of his discharge status to either an honorable discharge or discharge for medical reasons. *Id.* ¶¶ 30–31. In the alternative, he requests that the Court remand the matter to the BCNR for reconsideration, including by conducting additional medical evaluations. *Id.* ¶ 31.

Foreman moved for summary judgment based on the administrative record, and the Navy cross-moved for summary judgment. *See* Pl.'s MSJ; Defs.' MSJ.

## II. Legal Standards

Federal Rule of Civil Procedure 56(a) provides that a court must grant summary judgment if the movant can show "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law," and a dispute "is 'genuine' if 'the evidence is

8

such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In the APA context, however, courts play a more limited role and look at whether the administrative record supports the agency's action as a matter of law. *Schmidt v. Spencer,* 309 F. Supp. 3d 386, 391 (D.D.C. 2018). When a plaintiff brings claims under the APA, the reviewing court "sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The entire case on review is a question of law, and the complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). And summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Citizens for Responsibility & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)). In making that determination, a court is generally limited to the record before the agency at the time it made its decision. *See CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014).

Foreman brings his APA claim under 5 U.S.C. § 706(2)(A), which provides that a court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In applying that standard, the key question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). That standard "entails a 'very deferential scope of review' that forbids a

court from 'substitut[ing] its judgment for that of the agency,'" and thus the plaintiff's burden to make such a showing is a "heavy" one. *Van Hollen, Jr. v. FEC*, 811 F.3d 486, 495 (D.C. Cir. 2016) (quoting *Transmission Access Policy Study Grp. v. FERC*, 225 F.3d 667, 714 (D.C. Cir. 2000)).

Indeed, BCNR decisions "receive additional deference because Congress has given the Secretary of the Navy, acting through the [BCNR], wide discretion in deciding when to make corrections to military records." *Havens v. Mabus*, 146 F. Supp. 3d 202, 214 (D.D.C. 2015); *see* 10 U.S.C. § 1552(a)(1) (providing that the Secretary is empowered to correct military records "when the Secretary considers it necessary to correct an error or remove an injustice"); *see also Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (describing the standard as "unusually deferential" when applied to military records correction boards). The statutory standard "simply [makes it] more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice' than it is if he is required to act whenever a court determines that certain objective conditions are met." *Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1514 (D.C. Cir. 1989) (citations omitted) (quoting 10 U.S.C. § 1552(a)).

In applying that standard to the BCNR's decision, "[t]he question is not what [the Court] would have done, nor whether [it] agree[s] with the agency action," but "[r]ather the question is whether the agency action was reasonable and reasonably explained." *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015). To be sure, this does not mean the Court is merely a "rubber stamp of approval." *Miller v. Roche*, No. Civ. A. 03-1742 (RMC), 2004 WL 3257070, at *6 (D.D.C. November 4, 2004). If, for example, a board's "'explanation for its determination . . . lacks any coherence,' the [Court] 'owe[s] no deference to [the board's] purported expertise." *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (quoting *Tripoli Rocketry Ass'n,*

*Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006)). And "when a [military records] correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its [statutory mandate.]" *Id.* (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)). Remand is also appropriate if a board does not respond to arguments which "do not appear frivolous on their face and could affect [its] ultimate disposition." *Frizelle v. Slater,* 111 F.3d 172, 177 (D.C. Cir. 1997).

Ultimately, however, Congress has fashioned a heavily deferential standard that "is calculated to ensure that the courts do not become a forum of appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Indeed, under this standard "[p]erhaps only the most egregious decisions may be prevented." *Kreis*, 866 F.2d at 1515.

### III. Analysis

The Court's analysis of Foreman's claim proceeds in two parts. First, the Court considers Foreman's argument that his discharge was unjustly based on conduct for which he was already court-martialed. Second, the Court examines Foreman's various claims that the BCNR failed to adequately account for his mental and physical health status. In so doing, the Court, as it must, limits its review to the record before the BCNR at the time of its decision. *See Schmidt*, 319 F. Supp. 3d at 392. Finding that the BCNR addressed Foreman's concerns and that its decision was reasonable on the record before it, the Court rejects his claim and will enter summary judgment for the Navy.

#### A. Consideration of Foreman's Misconduct

Foreman contends that the Navy improperly discharged him based on conduct for which he had already been punished through his court-martial conviction. *See* Pl.'s MSJ at 15–16. He

11

argues that he was unjustly punished twice for the same conduct, and he stresses that despite sentencing him to confinement, the court-martial did not recommend administrative separation. *Id.* at 15. He also notes his commanding officer's recommendation for administrative separation incorrectly stated that Foreman was convicted of all three charges in his court-martial proceeding. *Id.* at 15–16. And he claims that the conduct to which he did plead guilty was "relatively minor" and "made in anger and frustration after being provoked" by his commanding officers, who he alleges "deliberately, unnecessarily[,] and illegally" ordered him to perform tasks beyond his limited-duty restrictions. *Id.* at 16. Given these considerations, Foreman maintains that his discharge was fundamentally unfair, and thus that the BCNR erred in deciding not to alter his status. The Court, for several reasons, cannot agree.

First, nothing in the record suggests that the Navy could not pursue administrative separation on an other than honorable basis due to Foreman's misconduct even though he had already been punished for that same misconduct as a result of a special court-martial. Indeed, applicable guidelines expressly state otherwise. *See* MCSRM ¶ 6106.2 (providing that "[a] prior court-martial conviction for a serious offense is not a bar to administrative separation processing based on that offense"). Moreover, Foreman's other than honorable discharge was based on a "pattern of misconduct," AR 157, and the applicable guidelines specifically contemplate that such misconduct may also result in a conviction by special court-martial, *see* MCRSM ¶ 6210.3 (noting that separation due to a pattern of misconduct "need not" be based on misconduct that was the subject of military or civilian conviction); *see also id.* ¶ 1004.4(c) (contemplating that a servicemember's administrative separation can be characterized as other than honorable when based on a pattern of misconduct that includes a serious offense for which the servicemember was convicted by court-martial). Foreman even acknowledged that he may be subjected to

12

administrative separation independent of his court-martial proceedings in his plea agreement. *See* AR 21–22.

Foreman thus resorts to a general claim that the decision was nevertheless "unjust." But the record does not support Foreman's assertion that the BCNR's conclusion was so manifestly unjust or erroneous that it must be set aside under the "unusually deferential" standard of review. *Piersall*, 435 F.3d at 325. The BCNR cited Foreman's "making private telephone calls from a government owned telephone, and conviction by special court-martial of two instances of communicating threats, one of which was a threat to kill a Staff Sergeant." AR 2.[5] Even considering Foreman's insistence that the misconduct was "relatively minor" and caused by provocation by his superior officers, the Court cannot conclude that the BCNR's decision lacks a rational basis. In reaching its decision, the BCNR emphasized the "seriousness of [Foreman's] misconduct," and the Court, given its limited role in reviewing that determination, will not substitute its own judgment for the BCNR's on the propriety of Foreman's discharge. AR 2.[6]

---

[5] Because the BCNR only references the conduct underlying the two charges to which Foreman pleaded guilty, to the extent Foreman's commanding officer mischaracterized the result of Foreman's court-martial proceeding when he recommended Foreman for administrative separation, there is nothing in the record that suggests that that error impacted the BCNR's conclusion. Moreover, because the BCNR relies exclusively on Foreman's misconduct, rather than the commanding officer's description of Foreman's general character and demeanor, Foreman's allegation of bias by the commanding officer are of no moment in assessing the reasonableness of the *BCNR's* conclusion.

[6] Foreman also asserts in a footnote that his counsel misled him about the potential punishment when he pleaded guilty to the two court-martial charges. *See* Pl.'s MSJ at 11 n.8. And he suggests that he pleaded guilty because he was scared. *Id.* But Foreman never develops this point further or explains why that should undermine the BCNR's conclusion that his other than honorable discharge should stand. The Court need not consider a cursory claim made only in a footnote. *See Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.9 (D.C. Cir. 1999).

### B. Consideration of Foreman's Mental and Physical Health

Foreman also contends that he should have been discharged because of his disability. *See* Pl.'s MSJ at 16–20. He claims that he was eligible for a medical discharge based on his ITBS, as evidenced by the medical officer's recommendation at the end of Foreman's light-duty period, and he also alleges that, given his past struggles with mental health, the Navy should have conducted a DES review to examine his mental health condition. *See id.* at 17–18. These processes, Foreman claims, were wrongly cut short once the Navy began administrative separation proceedings. *See id.* at 17–20. And thus he maintains that the BCNR erred when it failed to change his discharge status to reflect a medical discharge or, at the very least, send Foreman for additional medical evaluations. The Court, however, again finds that Foreman fails to meet his heavy burden to demonstrate that the BCNR's decision was unreasonable.

In its decision-letter to Foreman, the BCNR acknowledged that Foreman had been diagnosed with ITBS and certain behavioral disorders, but it was "not persuaded that [Foreman] was unfit for duty" by reason of disability. AR 2. The BCNR further noted that even if Foreman had been "unfit for duty" and therefore eligible for separation by reason of disability, his separation for misconduct would have taken precedence anyway. *See id.* And the BCNR found Foreman's claims that he lacked culpability for his misconduct because of struggles with his mental health, including alleged PTSD, to be "unsubstantiated" and, even assuming they were plausible, insufficient to warrant changing his discharge status. *Id.* The Court cannot conclude that those determinations were unreasonable or unsupported by evidence. Indeed, it is hard to see how the BCNR could have reached a different conclusion.

As to Foreman's physical condition, the medical officer that evaluated Foreman for any physical disability specifically concluded that Foreman's ITBS did *not* constitute a physical disability. AR 85. For that reason, and contrary to Foreman's assertion, the officer did not refer

him to the PEB, nor was he obligated to do so. *See* Defs.' MSJ at 19. And even if Foreman had been referred to the PEB to determine if he suffered from a physical disability, those proceedings, as the BCNR emphasized, would necessarily have been suspended due to Foreman's pending administrative separation by reason of misconduct. *See* AR 2; SECNAVINST 1850.4E ¶ 3403(a). Following Foreman's second period of limited duty, the medical officer did recommend that Foreman be processed for administrative separation "for the convenience of the government." Defs.' MSJ at 19; *see* AR 85. But there was no need to begin that process because that same day the Navy decided to administratively separate Foreman by reason of misconduct.

Foreman's arguments about his mental health fare no better. The record includes several evaluations of his mental health during his service, and while each noted that Foreman likely suffered from occupational or behavior disorders, none determined that he suffered from PTSD or any other mental health condition that would entitle him to discharge by reason of disability. *See* AR 58–60 (examination with medical officer in Kuwait); AR 40–43 (medical evaluation during court-martial proceeding). In fact, Foreman's examination to determine his competency to stand trial included a formal psychological evaluation, and the examiners concluded that Foreman likely "exaggerated" his psychological symptoms and that he did not appear to suffer from any serious mental illness or defect. AR 42–43. Without any medical evidence to the contrary, the BCNR's conclusion that Foreman's claim of PTSD was "unsubstantiated" was manifestly reasonable. AR 2.[7]

---

[7] The BCNR's decision does mention a "post service PTSD diagnosis" that Foreman provided. AR 2. It is not clear what the BCNR is referring to here, as Foreman makes no mention of such a diagnosis in either his petition to the BCNR or in his briefing before this Court. In any event, the Court's conclusion that Foreman failed to substantiate his claim of PTSD "at the time of [his] misconduct," even considering a "post service" diagnosis, is not unreasonable given the two

The medical officer who examined Foreman in Kuwait did recommend further psychological testing to determine Foreman's continued fitness for duty. AR 60. That recommendation, however, did not constitute a formal referral to the PEB. And even if it had, as the BCNR noted, *see* AR 2, because of Foreman's court-martial proceedings and his subsequent administrative separation by reason of misconduct, any review by the PEB would have been suspended. *See* SECNAVINST 1850.4E ¶ 3403(a). The BCNR thus was not unreasonable in concluding that, even if Foreman was in fact eligible for discharge by disability, his other than honorable discharge for misconduct without first referring him to a Navy medical board was still appropriate.

Foreman nevertheless contends that the BCNR was obligated to at least order additional examinations by the Navy medical boards. *See* Pl.'s MSJ at 19. Relying heavily on the D.C. Circuit's opinion in *Haselwander*, Foreman claims that, given indications in the record that he suffered from some mental health conditions, the BCNR had a duty to further "develop the record" and seek additional medical evidence. Pl.'s MSJ at 19–20 (citing 774 F.3d at 997). In *Haselwander*, the plaintiff had asked the Army Board for Correction of Military Records to revise his military record to reflect that he was wounded in combat so that he could receive the Purple Heart. *See* 774 F.3d at 991. But despite providing witnesses to his injury and photographs of his bandaged wounds, the Board rejected his request because there was "no available medical record to corroborate the photographs." *Id.* at 992 (emphasis removed). The D.C. Circuit found this reasoning "utterly illogical" and "patently unfair," given that the plaintiff's claims were supported by uncontested, creditable evidence, *id.* at 993, and that the

---

contemporaneous evaluations that made no such observation. AR 2. Moreover, it is Foreman's obligation to show that the BCNR's decision violated the APA, and he makes no mention of additional evidence that the BCNR inadequately considered. *See Van Hollen*, 811 F.3d at 495.

basis for the Board's denial was the very mistake in his medical records—the lack of any report of his injury—that he was attempting to correct, *id.* at 1000.

The circumstances present here are far afield. The BCNR did not ignore uncontested evidence, nor did it unfairly fault Foreman for the alleged error in his records that he seeks to have changed. Rather, it relied on record evidence suggesting that Foreman did *not* suffer from PTSD or any other serious mental health defect that would entitle him to discharge by reason of disability. And Foreman points to no extrinsic evidence presented to the BCNR that suggests otherwise. Instead, Foreman claims that the *Navy's* failure to conduct additional mental health screening ought to justify changing his discharge status. Pl.'s Reply at 4–5. But, for the reasons explained, nothing in the record suggests that the Navy deviated from its standard practices in declining to do so. And Foreman wrongly insists that the BCNR had to supplement the record on his behalf. While the BCNR certainly may not ignore "an injustice clearly *presented in the record*," *Yee*, 512 F.2d at 1387 (emphasis added), it "is not an investigative body," 32 C.F.R. § 723.2(b); *see also id.* § 723.4(e)(1) ("It is the responsibility of the applicant to procure such evidence not contained in the official records of the Department of the Navy as [he] desires to present in support of [his] case.").

Finally, Foreman's argument that the BCNR acted contrary to Department of Defense guidance to military records correction boards concerning PTSD claims is unpersuasive. *See* Pl.'s Reply at 7–9. He cites a 2014 memorandum from the Secretary of Defense, which directs that correction boards must "fully and carefully consider every petition based on PTSD brought by each veteran" and give "liberal consideration" to such claims. *See* SECDEF Memo at 1, 3.[8]

---

[8] These guidelines were later incorporated into the statute governing military records correction boards, albeit after the BCNR's decision in this case. *See* Pub. L. No. 115-91, 131 Stat. 1379 (codified at 10 U.S.C. § 1552(h)).

But the BCNR explicitly acknowledged this guidance in its decision, stating that it had "carefully considered" Foreman's PTSD claim, and explained that it still was "unable to substantiate [his] claims of PTSD at the time of [his] misconduct." AR 2. And, as explained above, the record reasonably supports that conclusion.

Even so, the BCNR went further and explained that even if Foreman were able to show that he suffered from PTSD at the time of his actions, the "seriousness of [his] misconduct [would have] outweighed any mitigation that would [have] be[en] offered by the PTSD." *Id*. The memorandum specifically provides that a diagnosis of PTSD should be "carefully weighed against the severity of the misconduct." SECDEF Memo. at 4. And the BCNR determined, reasonably in the Court's view, that Foreman's misconduct, including threatening to kill his superior officer, was particularly serious. Thus, not only is it clear from its decision that the BCNR followed the memorandum's guidance, but there is sufficient evidence in the record to support its ultimate conclusion applying it.

In light of the record presented, the Court finds that there is, at the very least, a rational connection between the evidence and the BCNR's conclusion that it "fails to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(2). Foreman certainly has not pointed to any aspect of the BCNR's decision that amounts to "egregious" error. *Kreis*, 866 F.2d at 1515. His claim will therefore be denied and the BCNR's decision left undisturbed.

**IV.  Conclusion**

For all the above reasons, Plaintiff's Motion for Summary Judgment, ECF No. 20, will be

denied, Defendants' Motion for Summary Judgment, ECF No. 23, will be granted, and judgment will be entered for Defendants. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 9, 2019